IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:16CV49 and 5:16CV50

| | | |
|---|---|---|
| SEDGEWICK HOMES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| STILLWATER HOMES, INC., | ) | |
| CHRISTOPHER BART BIVINS, and | ) | |
| GRETCHEN WYNE BIVINS, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| SEDGEWICK HOMES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| STILLWATER HOMES, INC., | ) | |
| JOSPEPH LYNN SHOEMAKER, and | ) | |
| EMILY GROCE SHOEMAKER, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court upon the Individual Defendants' Motions for Attorney's Fees as prevailing parties in this federal copyright lawsuit. Each motion has been fully briefed and this matter is ripe for disposition.

I. **FACTUAL BACKGROUND**

Defendant Stillwater Homes, Inc. ("Stillwater") built homes for the Individual Defendants, the Bivinses and the Shoemakers, in 2015. Plaintiff Sedgewick Homes, LLC ("Sedgewick") filed claims against Stillwater for copyright infringement as well as other claims.

1

Sedgewick also sued the Individual Defendants for copyright infringement and contributory infringement.

The gist of Plaintiff's claims against the Individual Defendants is that after visiting Sedgewick's model home and sales office they allegedly provided to Stillwater certain floor plans and elevations that Sedgewick had made publicly available and asked Stillwater to copy the plans and elevations. Prior to filing and serving the lawsuits against the Individual Defendants, Sedgwick did not contact any of the Individual Defendants to inquire as to whether they had provided any of Sedgwick's information to Stillwater. The Individual Defendants were forced to hire counsel, Mr. Gary Beaver, to defend them. Because Individual Defendants are middle-class families of limited means, Mr. Beaver agreed reduce his billing rate from $410 per hour to $300 per hour.

Nearly two weeks after counsel had conducted a lengthy Rule 26(f) telephone conference, Sedgewick's counsel offered to stay the claims against the Individual Defendants only if each couple paid Sedgewick $5000, an amount Sedgewick describes as "nominal." Mr. Beaver thereafter emailed Sedgewick's counsel an 8-page letter with exhibits rejecting the offer to have the Individual Defendants pay for a stay and, instead, laid out the evidence showing that Sedgwick's claims against the Individual Defendants were baseless and "tantamount to economic blackmail on two innocent middle-class families who [Sedgewick] never even bothered to contact about its suspicions prior to filing the lawsuit." Mr. Beaver included an affidavit from Robert Baldwin, Stillwater's owner, stating that the Individual Defendants had not given him any of Sedgwick's materials.

In discovery, the Individual Defendants sought to discover any evidence that Sedgwick had showing that either the Bivinses or the Shoemakers had ever provided any Sedgwick plans to

Stillwater. No evidence of that sort was ever produced by Sedgwick to the Individual Defendants.

After Sedgewick took the depositions of the Individual Defendants, it finally agreed to stay the claims against them without requiring them to pay in return for the stay. As of the date of entry of the stay, each couple had paid Mr. Beaver approximately $7000 in legal fees but owed him substantially more than that.[1]

After the Court denied both Sedgewick and Stillwater's motions for summary judgment, a jury trial was held. At the trial, when asked by Defendant's counsel why Stillwater sued the Individual Defendants, David Tucker, the president of Sedgewick, testified as follows:

> TUCKER: Well, past experience with other builders shows that if you get the customers involved in this they will push the builder to come up with a speedy resolution.
>
> THE COURT: Wait a minute. You joined them in to pressure this guy [Stillwater's owner]? Is that what you're saying?
>
> TUCKER: Well, it certainly helps.

(Doc. No. 206-1, pp. 87-88).

After Sedgewick's case in chief, the Court granted in part Stillwater's Rule 50 motion, leaving only the copyright infringement claim. The jury returned a verdict finding that Plaintiff owned a valid copyright; Stillwater had access to Plaintiff's work and there is substantial similarity between the Quail Valley and the Trent, but that Trent plan was created independently by Stillwater. Thereafter, Sedgewick moved to dismiss its claims against the Individual Defendants and the Court granted the motion, dismissing the claims with prejudice. The Individual Defendants now seek their attorney's fees as prevailing parties.

---

[1] Mr. Beaver states that he stopped billing the Individual Defendants once he learned that Mr. Bivins was looking into selling his house to pay his outstanding legal bills.

3

## II. DISCUSSION

Section 505 of the Copyright Act provides that a district court "may … award a reasonable attorney's fee to the prevailing party." A defendant prevails when the plaintiff's challenge is rebuffed, irrespective of the precise reason for the court's decision. *CRST Van Expedited, Inc. v. EEOC*, 136 S. Ct. 1642, 1651 (2016). When a dismissal with prejudice is entered dismissing a defendant from the lawsuit there has been a "material alteration of [the parties'] legal relationship" and the defendant is a prevailing party. *Claiborne v. Wisdom*, 414 F.3d 715, 719 (7th Cir. 2005).

In the Fourth Circuit, courts employ four factors in determining whether to exercise the court's "equitable discretion" to award attorney's fees on the facts of the case, namely: "(1) 'the motivation of the parties,' (2) 'the objective reasonableness of the legal and factual positions advanced,' (3) 'the need in particular circumstances to advance considerations of compensation and deterrence,' and (4) any other relevant factor presented.'" *Diamond Star Bldg. Corp. v. Freed*, 30 F.3d 503, 505 (4th Cir. 1994) (quoting *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 234 (4th Cir. 1993) (internal quotations omitted)).

The Supreme Court has found that a district court must give "substantial weight" to the reasonableness of a non-prevailing party's position in determining whether a court should award fees, while also considering other relevant factors. *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1989 (2016). However, while objective reasonableness is an important factor in assessing fee applications, it is not the controlling one. *Id*. at 1988. The court:

> must take into account a range of considerations beyond the reasonableness of litigating positions. *See supra*, at 1985. That means in any given case a court may award fees even though the losing party offered reasonable arguments (or, conversely, deny fees even though the losing party made unreasonable ones). For example, a court may order fee-shifting because of a party's litigation misconduct, whatever the reasonableness of his claims or defenses. *See*, *e.g.*, *Viva Video, Inc. v.*

4

> *Cabrera*, 9 Fed. Appx. 77, 80 (C.A.2 2001). Or a court may do so to deter repeated instances of copyright infringement or overaggressive assertions of copyright claims, again even if the losing position was reasonable in a particular case. *See*, *e.g.*, *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 593–595 (C.A.6 2008) (awarding fees against a copyright holder who filed hundreds of suits on an overbroad legal theory, including in a subset of cases in which it was objectively reasonable). Although objective reasonableness carries significant weight, courts must view all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals.

*Id.* at 1988-89.

The Court will first address the objective reasonableness of the factual and legal positions advanced by the Plaintiff. "Unless an argument or claim asserted in the course of litigation is so unreasonable that no reasonable litigant could believe it would succeed, it cannot be deemed objectively baseless for purposes of awarding attorney fees." *Exclaim Mktg., LLC v. DirecTV*, LLC, No. 5:11-CV-684-FL, 2015 WL 5725703, *7 (E.D.N.C. Sept. 30, 2015). Considering the evidence presented at trial, the Court cannot find that Sedgewick's claims against the Individual Defendants were objectively baseless.

As noted above, however, objective reasonableness is not the controlling factor in determining prevailing party fee applications. The Court must also assess the motivation of the parties. At the trial, Sedgewick admitted its motivation for suing the Individual Defendants: to pressure Stillwater to settle. This bad faith motivation weighs strongly in favor of a fee award.

The next consideration for the Court is the need in particular circumstances to advance considerations of compensation and deterrence. At the time Sedgewick sued the Individual Defendants, it had no evidence that they had done anything wrong other than the fact that they had taken the brochures of the house plans from Sedgewick after visiting its model and had ultimately built similar homes. Sedgewick did not respond to Individual Defendants' requests to provide what evidence it had that they had provided plans to Stillwater. Suing first and asking

5

questions later does not advance the goals of the Copyright Act. It is not unusual for a customer to shop for the best deal on a particular type of house by looking at similar models and house plans offered by different builders. Rather than proceeding immediately with suing the Individual Defendants, Sedgewick could have, and should have, sued Stillwater first and then added the homeowners if it actually found evidence of wrongdoing. However, Sedgwick admits that it sued these homeowners in an effort to extract a quick settlement from Stillwater. The Court finds that the need in these circumstances to advance considerations of compensation and deterrence weigh in favor of awarding fees.

With regard to other relevant factors, each side accuses the other of overly-aggressive litigation conduct. The Court will not sort through each allegation and make a finding as to which side exhibited the worst conduct. This factor will not weigh in favor of either side.

Considering each of the factors set out in *Diamond Star Bldg.,* the Court finds that these factors weigh in favor of a fee award to the Individual Defendants. While the reasonablness of Sedgwick's position is a significant factor, as stated by the Supreme Court in *Kirtsaeng,* it is not controlling and can be outweighed by other considerations. Here, the Court finds that Sedgwick's admitted bad faith motivation for suing these Defendants outweighs any consideration of the objective reasonableness factor.

Having determined that a fee award is appropriate, the Court now turns to the reasonableness of the fees requested. When making this determination, the Court uses the lodestar methodology prescribed by the Fourth Circuit in *Grissom v. Mills Corp*., 549 F.3d 313, 320-21 (4th Cir. 2008). This requires the Court to (i) calculate the lodestar figure, which is determined by multiplying the "reasonable hourly rate" by the "hours reasonably expended," in light of the factors enumerated in *Barber v. Kimbrell's, Inc*., 577 F.2d 216 (4th Cir. 1978) (the

6

"*Johnson/Barber* factors") (ii) subtract fees for hours spent on unsuccessful claims unrelated to successful ones, and (iii) award some percentage of the remaining amount, depending on the degree of success achieved. *Grissom*, 549 F.3d at 320–21.

The Fourth Circuit has summarized the *Johnson/Barber* factors to include:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Spell v. McDaniel*, 824 F.2d 1380, 1402 n. 18 (4th Cir.1987).

The Court will address each factor in turn. The time and the labor expended on these cases appear to be reasonable. Mr. Beaver handled the matters by himself and at a reduced rate with no guarantee of being fully paid. He was aware from the outset that the Individual Defendants were of limited means. Mr. Beaver has submitted the affidavits of two experienced intellectual property attorneys who practice in North Carolina federal courts, including this district. Both have opined that the work done and time expended were reasonable and appropriate. Plaintiff argues that Mr. Beaver's billing was excessive. However, each of the arguments it advances to support this allegation is without merit and adequately countered by Mr. Beaver.

The cases did not raise any difficult or novel issues, although the Court does recognize that federal copyright infringement litigation requires a higher level of skill than the average case. Regarding opportunity costs, Mr. Beaver's handing of this case precluded him from performing work at a much higher rate for immediate payment.

7

Because of their limited means, Mr. Beaver charged the Individual Defendants at a rate of $300 per hour, well below his then normal hourly billing rate of $410. Mr. Beaver's current hourly rate is $445. The Court finds that the reduced rate charged is well below the prevailing market rate for attorney's fees in this district for copyright litigation by an attorney with Mr. Beaver's education and experience. With regard to attorney's expectations at the outset of litigation, Mr. Beaver agreed to defend the Individual Defendants at a reduced rate as necessary. However, once Mr. Beaver learned that Mr. Bivins was considering selling his home to pay his legal bills, Mr. Beaver told both couples to stop paying the legal bills and wait until the conclusion of the litigation so that Mr. Beaver could attempt to obtain payment from Sedgewick if the Individual Defendants ended up prevailing. At this time, a significant portion of the fees remain unpaid by the Individual Defendants.

The trial in this case was continued several times requiring Mr. Beaver to be involved in the case longer than anticipated and required him to review more documents and prepare his clients to testify at trial more than once. These trial delays were not caused by the Individual Defendants. Regarding the amount in controversy and results obtained, the "degree of success obtained" is the most critical factor. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). The Individual Defendants ultimately had all claims against them dismissed with prejudice. The Court finds that Mr. Beaver is an experienced business attorney whose practice has included intellectual property litigation. His submissions in support of the fee award support the fact that he is competent and experienced. In addition, the case itself is undesirable because of the clients' inability to pay. Few attorneys would agree to defend clients in federal litigation at a billing rate significantly below their normal rate with the risk of nonpayment. Moreover, few would carry a large balance of unpaid fees for years.

Mr. Beaver indicates that this is the only case in which he has represented these Individual Defendants so the length of their professional relationship only extends for the length of this case. Regarding fee awards in similar cases, the Court does not have sufficient information to make such an analysis.

Employing the methodology prescribed by the Fourth Circuit in *Grissom* and considering the *Johnson/Barber* factors, the Could finds that the amount of attorney's fees requested by the prevailing Individual Defendants is reasonable. The Court declines to reduce the fees as the Individual Defendants obtained complete success as a result of the claims against them being dismissed with prejudice. Accordingly,

IT IS THEREFORE ORDERED that Joey and Emily Shoemakers' Motion for Prevailing Party Costs is hereby granted in the amount of $41,122.50; and

IT IS FURTHER ORDERED that Bart and Gretchen Bivins' Motion for Prevailing Party Costs is hereby granted in the amount of $35,400.

Signed: July 17, 2019

Graham C. Mullen
United States District Judge